**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **HID GLOBAL CORP.,** | ) | **CASE NO. 1:07 CV 1972** |
| | ) | |
| **Plaintiff,** | ) | **JUDGE PATRICIA A. GAUGHAN** |
| | ) | |
| **vs.** | ) | |
| | ) | |
| **LEIGHTON,** | ) | <u>**Memorandum of Opinion and Order**</u> |
| | ) | |
| **Defendant.** | ) | |

This matter is before the Court upon defendant's motion to dismiss the complaint for violation of Federal Rule of Civil Procedure 13(a).  (Doc. 11)  This case arises out of the alleged breach of a confidentiality agreement entered into between the parties.  For the reasons that follow, defendant's motion to dismiss is DENIED.

<u>**FACTS**</u>

Plaintiff HID Global Corporation ("HID"), a citizen of Delaware and California, brings this action in diversity against defendant and Ohio resident Keith R. Leighton ("Leighton") for breach of contract and unjust enrichment.  HID sells access control cards (or, "RFID cards") and readers used in a variety of applications in the security industry.  In 1995,

Indala Corporation ("Indala") was a subsidiary of Motorola, Inc. ("Motorola") and was engaged in the RFID card business. HID is the successor-in-interest to all of the assets and contract rights of Indala and/or Motorola's RFID business.

In 1995, Motorola and Leighton entered into a consulting agreement by which Leighton was to develop a lamination process to manufacture RFID cards. The agreement was memorialized by a purchase order from Motorola for Leighton's services. At that time, the parties also entered into a Confidentiality Agreement, which is at the heart of this suit. The Confidentiality Agreement provides in relevant part:

> I [Leighton] will promptly and fully communicate in writing to an Executive Officer of Motorola or its nominees all inventions, innovations and ideas developed or conceived by me, whether solely or jointly with others at any time during the entire period of my engagement with Motorola, and which inventions, innovations and ideas relate to the actual and anticipated business activities of Motorola, or result from, or as suggested by, work which I do for Motorola. I agree to assign and hereby assign to Motorola as its exclusive property the entire right, title and interest in all such inventions, innovations and ideas. I will at all times during my engagement with Motorola, and after the termination of my engagement for any reason, assist Motorola in every proper way but entirely at Motorola's expense, to obtain and maintain for Motorola's benefit patents, copyrights, and other legal protection in any and all countries for the above-mentioned invention, innovations and ideas. ... I agree that all such inventions, innovations, and ideas are and will remain the property of Motorola whether or not patented. I agree to keep, maintain and make available to Motorola, written records of all such inventions, innovations, and ideas, and to submit promptly such written records, and supplemental oral disclosures, to designated representatives of Motorola.
> ...
> That I will maintain strictly confidential and not publish, disseminate, or disclose to others, data and information of Motorola which I may originate or of which I learn during my period of engagement with Motorola and which is of a confidential or secret nature, including but not limited to product,

2

> machine, and process developments, whether patentable or not,
> manufacturing "know-how", formulas, designs, photographs,
> plans, specifications ... and the like.

Shortly after his consulting engagement ended with Motorola, Leighton allegedly began contacting potential employers, touting his "innovations" in RFID technology and providing samples that he created while consulting for Motorola.  Leighton also applied for and obtained several United States patents in his own name relating to a lamination process for the manufacturing of RFID cards (the "Leighton patents").  Leighton has since assigned his interest in these patents to Leighton Technologies, LLC ("LT").

In 2003, LT accused HID of infringing the Leighton patents.  In response, HID initiated an action against LT in the Central District of California seeking, among other things, declaratory judgments that the Leighton patents were invalid, unenforceable, or not infringed.  The California action was initiated in May 2005.  LT then filed counterclaims in the California action alleging HID infringed the Leighton patents.  One of HID's affirmative defenses to the charge of infringement is that it is the rightful owner of the Leighton patents.

The complaint in the instant case contains four claims for relief.  Count One alleges a breach of the Confidentiality Agreement by Leighton's breach of the duty to notify Motorola of his inventions made during his engagement.  Count Two alleges a breach of the Confidentiality Agreement by Leighton's breach of the duty to assign to Motorola all interest in those inventions.  Count Three alleges a breach of the Confidentiality Agreement by Leighton's breach of the duty to keep Motorola's information confidential and refrain from disclosing such information to third parties.  Count Four alleges unjust enrichment as a result of Leighton's improper retention of Motorola's assets and property rights and commercial

exploitation thereof.

Defendant Leighton now moves to dismiss the Ohio action for violation of Federal Rule of Civil Procedure 13(a), which relates to compulsory counterclaims.  Plaintiff opposes the motion.

### **STANDARD OF REVIEW**

Defendant states that he brings his motion pursuant to "Rule 12(b) of the Federal Rules of Civil Procedure."  He does not indicate under which subsection of Rule 12(b) he is moving.  Plaintiff assumes that the motion is brought pursuant to Rule 12(b)(6) and defendant does nothing to disabuse plaintiff or the Court of the correctness of this assumption.  One who fails to bring a compulsory counterclaim is barred from later bringing that claim under a waiver theory.  *E.g., Kane v. Magna Mixer Co.*, 71 F.3d 555, 562-63 (6th Cir. 1995).  The appropriate vehicle for challenging a claim that should have been brought as a compulsory counterclaim does seem to be a motion pursuant to Rule 12(b)(6).  *See id.* at 560 (noting that the motion to dismiss the later-filed case was brought under Rule 12(b)(6)).

When considering a motion to dismiss pursuant to Rule 12(b)(6), the district court must accept all of the allegations in the complaint as true and construe the complaint liberally in favor of the plaintiff.  *Lawrence v. Chancery Court of Tenn.,* 188 F.3d 687, 691 (6th Cir. 1999).  When an allegation is capable of more than one inference, it must be construed in the plaintiff's favor.  *Saglioccolo v. Eagle Ins. Co.*, 112 F.3d 226, 228 (6th Cir. 1997).  However, the complaint must contain "more than the bare assertion of legal conclusions."  *In Re DeLorean Motor Co.*, 991 F.2d 1236, 1240 (6th Cir. 1993).  "In practice, a ... complaint must contain either direct or inferential allegations respecting all the material elements to sustain a

4

recovery under *some* viable legal theory." *Id.* (quoting *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988)) (emphasis in original).

### **DISCUSSION**

Defendant Leighton contends that the instant action must be dismissed, because plaintiff's breach of contract and unjust enrichment claims were required to be filed as compulsory counterclaims in the California action. Rule 13(a), relating to compulsory counterclaims, provides in relevant part:

> A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any *opposing party*, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction.

Fed. R. Civ. P. 13(a) (emphasis added). The resolution of defendant's motion to dismiss depends upon who constitutes an "opposing party." The Sixth Circuit does not appear to have addressed the issue.

Plaintiff contends that the meaning of "opposing party" is clear and that Leighton is not an "opposing party" in the California action such that the claims brought here in Ohio were compulsory in the California action. *See e.g., Cincinnati Milacron Indus., Inc. v. Aqua Dyne, Inc.*, 592 F.Supp. 1113 (S.D. Ohio 1984) (declining to extend Rule 13(a) beyond its plain terms and denying a motion to dismiss where there was not exact identity between the parties to the two lawsuits). Plaintiff argues that to construe Rule 13(a) otherwise would "lead to chaos."

Leighton, on the other hand, argues that the term "opposing party" should be construed broadly to encompass him under the rule espoused by *Transamerica Occidental*

5

*Life Ins. Co. v. Aviation Office of Am., Inc.*, 292 F.3d 384 (3d Cir. 2002).  Under the *Transamerica* test, a counterclaim is compulsory if it is to be asserted against an entity that is the "functional equivalent" of the opposing party.  Plaintiff counters that even if the *Transamerica* test is to be followed, Leighton has failed to establish that he and LT are "functionally equivalent" such that Leighton can be considered an "opposing party" in the California action for Rule 13(a) purposes.

The Court agrees with plaintiff.  Leighton is not an "opposing party" within the plain meaning of Rule 13(a).  Further, Leighton is not the "functional equivalent" of LT, the defendant in the California action.  In *Transamerica*, the defendant in the second lawsuit was the successor-in-interest to all rights and obligations of the plaintiff in the first lawsuit.  It was on this basis that the Third Circuit determined the term "opposing party" should be extended to include an entity not already a party to the first action.  Such is not the case here.  Leighton is not the successor-in-interest to any of LT's rights, such that Leighton would be susceptible to a compulsory counterclaim in California.  The privity between Leighton and LT as to the patent rights is insufficient to render the breach of contract claims against Leighton compulsory in the California action.  The Court finds that *Transamerica* is inapplicable.  The Court further declines to extend that case to the facts here.  The motion to dismiss, accordingly, is denied.[1]

In so ruling, the Court finds the words of one district court particularly apt:

---

[1]

      Defendant's reliance on the "first to file" doctrine is also misplaced. This rule applies in situations where the same claims, for example a patent infringement suit and a suit for declaratory judgment of non-infringement, are filed in two separate courts. *See e.g., Genentech v. Eli Lilly & Co.*, 998 F.2d 931 (Fed. Cir. 1993).

6

> Whatever flaws Rule 13 may have, it at least has the virtue of clarity.  The plain meaning of "opposing party" is a party to the lawsuit -- that is, a named party who asserted a claim against the counterclaimants.  To accept the expansive definition of this term espoused by defendants would erode the Rule's clarity to the point that litigants would simply have to guess in each individual case whether a court would determine that a potential defendant to a counterclaim is an "opposing party."  While other Circuits have carved exceptions to this plain meaning in instances where there was no question that the counterclaim defendant was in all salient legal respects identical to a named party [such as in *Transamerica*], such is not the case here.

*GIA-GMI, LLC v. Michener*, 2007 U.S. Dist. LEXIS 44077 (N.D. Cal. Jun. 7, 2007).

Having resolved the motion on the "opposing party" ground, the Court declines to decide whether the breach of contract issues to be litigated in the instant case arise out of the same transaction or occurrence that is the subject matter of LT's claim of patent infringement in the California action.

### **CONCLUSION**

For the foregoing reasons, defendant's motion to dismiss is DENIED.

IT IS SO ORDERED.

 /s/ Patricia A. Gaughan                                       
PATRICIA A. GAUGHAN
United States District Judge

Dated: 11/15/07